UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MONSANTO COMPANY,            )
                             )
        Plaintiff,           )
                             )
    vs.                      )        No. 4:07-CV-543 (CEJ)
                             )
SYNGENTA CROP PROTECTION, INC., )
                             )
        Defendant.           )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion to dismiss for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1), Fed.R.Civ.P., and for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff opposes the motion and the issues are fully briefed.[1] Plaintiff has also requested leave to file a sur-reply, which defendant opposes.

After plaintiff Monsanto Company introduced its new herbicide PARRLAY™, defendant Syngenta Crop Protection, Inc., sent a letter informing Monsanto of its patented weed-control process that combines two herbicides. Syngenta warned Monsanto that it would view any attempt to market PARRLAY™ for use in conjunction with Monsanto's phospho-herbicide Roundup® as an infringement of its patent. Monsanto brings this action requesting a declaration of

---

[1]Defendant included a request for oral argument in the caption of its motion; plaintiff concurred with the request in its reply in support of its motion for leave to file a sur-reply. The Court does not believe that oral argument would aid in its understanding of the facts or in its determination of the legal issues presented by the parties.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

non-infringement or of invalidity of the patent.  Syngenta moves to dismiss the action, arguing that there is no actual case or controversy because Monsanto does not allege that it has sold or plans to sell an infringing product.

I.   **Background**

Monsanto manufactures Roundup®, a glyphosate-based herbicide.  Monsanto also develops genetically-modified Roundup-Ready® seed products; crops grown from these seeds withstand the application of Roundup®.  To reduce the risk of developing glyphosate-resistant weeds, Monsanto recommends the use of a residual herbicide, such as metolachlor, in conjunction with Roundup®.  Syngenta holds a patent for a weed-control process that combines a phospho-herbicide and another from a group of herbicides, including metolachlor.[2]  U.S. Patent No. 6,586,367 B2 (the '367 patent), Pl's Ex. A to First Amended Complaint [Doc. #14-2].

On January 10, 2007, Monsanto introduced PARRLAY™, a metolachlor herbicide, for use as a residual herbicide as part of the Roundup Ready® weed control system.  The marketing literature describes PARRLAY™ as a "New selective herbicide for use in Roundup Ready® cotton and Roundup Ready Flex cotton systems."  Pl's Ex. 5 [Doc. #23-9].  The PARRLAY™ direction booklet provides instructions

---

[2]Syngenta manufactures herbicides, including S-metolachlor, which it describes as an "environmentally favorable" form of the herbicide.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

for using PARRLAY™ on its own and, as relevant to this dispute, in conjunction with other products, including glyphosate.[3]

On January 30, 2007, Thomas Hamilton, Syngenta's managing patent attorney, wrote to Monsanto regarding the launch of PARRLAY™ products. Pl's Ex. 4 to Memorandum in Opposition [Doc. #23-8]. Hamilton's letter informed Monsanto of the '367 patent, which he described as a "process for the control of weeds . . . characterized in that a herbicidally effective amount of a phospho-herbicide, such as glyphosate, and a further herbicide, including metolachlor, are allowed to take effect on the cultivated plant or its habitat." Hamilton noted Syngenta's respect for the property rights of others and its concern that others not infringe its own patents. The letter also stated: "Syngenta requests that Monsanto refrain from making these recommendations on their labels or recommending these mixtures in the market. . . . If you are of the opinion that this patent is not relevant to Monsanto, please provide the basis for that opinion . . . within two weeks." Hamilton's letter also invited Monsanto to consider entering a licensing agreement or purchasing S-metolachlor from Syngenta.

Monsanto asserts that Syngenta has used the threat of a possible patent-infringement action in an effort to coerce it to enter into an unfavorable exclusive supply agreement for

---

[3]"**Tank Mixtures**: Fill the spray tank one-quarter full with water, and start agitation; add Canopy®, Caparol® . . . or Trifluralin, and allow it to become dispersed; then add PARRLAY™; then add paraquat, or glyphosate if these products are being used; and finally the rest of the water." Pl's Ex. 1-B at 6-7 [Doc. #23-4].

-3-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

metolachlor. Monsanto provides the declaration of Larry Evetts, Monsanto's global business lead for glyphosate. Pl's Ex. 1-A [Doc. #23-2]. Evetts states that he was first approached by one of his business contacts at Syngenta who asked why Monsanto had not asked Syngenta to supply metolachlor for the PARRLAY™ product. Evetts reported back that Syngenta had rebuffed Monsanto's initial approach and that Monsanto had then arranged to buy its 2007 supply from a third party.

Evetts and Greg Peters of Syngenta have discussed a possible metolachlor supply agreement for future years. According to Evetts, Peters told him that a long-term exclusive supply agreement would resolve any potential patent issues arising from tank-mixing glyphosate and metolachlor. Evetts further declares that Syngenta has never assured Monsanto that it did not plan to sue Monsanto for infringement of the '367 patent; rather, Syngenta has "expressly and repeatedly conveyed . . . its position that the marketing of the PARRLAY™ product exposed Monsanto to a potential patent infringement action based upon the '367 patent." Furthermore, Syngenta has "made clear its intent to use the '367 patent as a leverage device in order to obtain a long term, exclusive supply agreement with Monsanto." Evetts states that Syngenta insists on a minimum five-year commitment that establishes Syngenta as the sole supplier for the entire herbicide group of chloracetamides. Finally, Syngenta would require that Monsanto promote Syngenta's products for tank-mixing.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In his declaration [Doc. #26], Peters acknowledges that a supply agreement would include "non-assert" provisions allowing Monsanto to freely use the PARRLAY™ products containing Syngenta's metolachlor. Peters states, however, that he never threatened that Syngenta would bring a patent infringement action if Monsanto did not enter into a supply agreement for metolachlor. Peters further states that, at one time, Evetts told him that Syngenta's proposed price and five-year term were acceptable to Monsanto. The parties continued to discuss a supply agreement after Monsanto filed this action.[4]

## II. Discussion

The Declaratory Judgment Act provides, in relevant part, that:

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The Act's "actual controversy" requirement is equivalent to Article III's case-or-controversy requirement. Geisha, LLC v. Tuccillo, 2007 WL 2608558 (N.D. Ill. Sept. 4, 2007), citing MedImmune, Inc. v. Genentech, Inc., --- U.S. ---, 127 S. Ct. 764, 771 (2007), and Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1336-38 (Fed. Cir. 2007). An Article III controversy is found where a plaintiff has demonstrated an injury-

---

[4]Attached to the Peters declaration is what purports to be a transcript of a voicemail message Evetts left for Peters the day after Monsanto filed suit. After acknowledging the lawsuit, Evetts stated that Monsanto was still very interested in a supply agreement.

-5-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

in-fact caused by the defendant that can be redressed by the court. Teva, 482 F.3d at 1340.

The party claiming declaratory judgment jurisdiction bears the burden to establish that such jurisdiction existed at the time the claim for declaratory relief was filed. Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007). The declaratory judgment plaintiff must prove that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 127 S. Ct. at 771, quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). Even if declaratory judgment jurisdiction is established, the court has "some discretion in determining whether or not to exercise that jurisdiction." Cardinal Chem Co. v. Morton Int'l, Inc., 508 U.S. 83, 95 n.17 (1993); Sony Electronics, Inc. v. Guardian Media Technologies, Ltd., 497 F.3d 1271, 1287-89 (Fed. Cir. 2007).

Prior to the Supreme Court's decision in MedImmune, the Federal Circuit required the declaratory judgment plaintiff in a patent action to establish "both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975,

-6-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

978 (Fed. Cir. 1993). After the Supreme Court's decision in MedImmune, however, the Federal Circuit determined that the decision "represents a rejection of our reasonable apprehension of suit test." SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007).

Federal Circuit decisions in patent cases following MedImmune have established that "a declaratory judgment plaintiff does not need to establish a reasonable apprehension of a lawsuit in order to establish that there is an actual controversy between the parties." Sony Electronics, 497 F.3d at 1284. "The Supreme Court has not articulated a bright-line rule for distinguishing those cases that satisfy the actual controversy requirement from those that do not. Indeed, it has stated that '[t]he difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree . . .'" Id. at 1283 (alteration in original), quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

> Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do. . . . [W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

SanDisk, 480 F.3d at 1381. "A useful question to ask in determining whether an actual controversy exists is what, if any,

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." Benitec, 495 F.3d at 1344.

The Court has examined the following patent cases applying the MedImmune standard: SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372 (Fed. Cir. 2007); Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340 (Fed. Cir. 2007); Sony Electronics, Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271 (Fed. Cir. 2007); and BridgeLux, Inc. v. Cree, Inc., 2007 WL 2022024 (N.D. Cal. July 9, 2007).

In SanDisk, the Federal Circuit determined that the declaratory judgment plaintiff had established an Article III case or controversy under MedImmune. 480 F.3d at 1382. In that case, patent holder STMicroelectronics (ST) initiated correspondence to inform SanDisk of several patents ST thought "may be of interest" to SanDisk and to seek a cross-licensing agreement. Id. at 1374. Thereafter, ST's intellectual property team presented to its counterpart at SanDisk a slide show comparing statistics regarding the parties' patent portfolios, revenue, and development expenses. The slide show was followed by a four- to five-hour presentation by ST's technical experts who identified the specific claims of each ST patent that they alleged SanDisk infringed, mapping specific elements of SanDisk's products to the claims. ST also provided a 300-page packet of materials, containing a copy of fourteen patents and reverse engineering reports purporting to show SanDisk's infringement. Id. ST also sought a right to royalty under its patents based on specific, identified activity by SanDisk. Id. at

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1382.  Despite ST's promise not to sue SanDisk, the Federal Circuit concluded that "ST has engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights . . ." Id. at 1383.

The parties in Benitec were biotechnology companies in the field of RNA interference.  495 F.3d at 1342.  Benitec brought suit against Nucleonics, alleging infringement of its patent and Nucleonics filed counterclaims seeking declarations of invalidity and unenforceability.  After suffering some setbacks – the discovery that two contributors to Benitec's patented invention were not named as inventors and an unfavorable reading of the pharmaceutical research exception by the Supreme Court – Benitec sought dismissal of the action.  Id. at 1342-43.  The district court granted Benitec's motion to dismiss its infringement claim without prejudice and dismissed Nucleonics's counterclaims for lack of jurisdiction.  Nucleonics appealed.

The Federal Circuit examined the existence of declaratory judgment jurisdiction at two times: when Nucleonics filed its counterclaim and after the dismissal of the infringement claim.  The court found that declaratory judgment jurisdiction existed at the time Nucleonics filed its counterclaims because Benitec had charged it with infringement.  Id. at 1345.  Once Benitec dismissed its claims, however, Nucleonics could not establish the existence of a case or controversy for its declaratory judgment claims.  Nucleonics would need FDA approval for any human applications of its process and was admittedly many years from that milestone.  Id.

at 1346-48. Nucleonics argued that there existed a justiciable controversy with respect to its proposed animal applications, for which FDA approval was not required. Nucleonics submitted the declaration of its president who stated that Nucleonics had opened supply discussions with a livestock breeder. However, there was no evidence that Nucleonics had yet sold an infringing product in violation of § 271(a); with respect to infringement through offering to sell, there was no evidence that it had yet made a definite offer to the livestock supplier that the supplier could accept. Its future plans to venture into potentially infringing animal research amounted to "a scant showing" that "would allow nearly anyone who so desired to challenge a patent." The federal circuit concluded that Nucleonics did not satisfy MedImmune's immediacy and reality requirement. Id. at 1348-49.

In Sony Electronics, Inc. v. Guardian Media Technologies, Ltd., several producers of televisions and DVD products filed suit seeking declarations that Guardian's "V-Chip" patents were not infringed, were invalid, or were unenforceable against plaintiffs. Over the course of several years, Guardian had repeatedly communicated to the manufacturers that it believed that they were infringing Guardian's patents. See, e.g., 497 F.3d at 1274 ("Notice of Patent Infringement" sent to Sony). For example, Guardian provided the manufacturers with charts that listed each claim and described, on a limitation-by-limitation basis, the basis for its belief that the accused products infringed the patents. Id. at 1274. In the course of unsuccessful license negotiations,

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Guardian also claimed it was entitled to royalties in excess of $30 million.  Id. at 1276.

The Federal Circuit found that an actual controversy existed between Guardian and the manufacturers.  With respect to Sony's declaratory judgment claims, the court stated:

> Sony does not request "an opinion advising what the law would be upon a hypothetical state of facts."  Indeed, Guardian has explicitly identified the patents it believes that Sony infringes, the relevant claims of those patents, and the relevant Sony products that it alleges infringe those patents.  Sony has identified the specific prior art references that it believes render the asserted claims invalid.  [T]he parties' dispute "is manifestly susceptible of judicial determination.  It calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present rights upon established facts."

Id. at 1285-86, quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242 (1937).

The parties in BridgeLux, Inc. were involved in litigation in three districts over patents relating to light-emitting diode devices.  Cree, Inc.,[5] filed the first action, bringing claims in the Middle District of North Carolina that BridgeLux was infringing two of its patents.  2007 WL 2022024 at *1.  BridgeLux responded with: (1) a motion to dismiss the infringement suit in North Carolina; (2) a new action in the Eastern District of Texas, alleging infringement of its own LED patent; and (3) a declaratory judgment action in the Central District of California, seeking a declaration of noninfringement and invalidity of six of Cree's patents.  Id.

---

[5]Boston University owned two patents for which Cree held the exclusive license and was a party to the original action.

-11-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In the California action, Cree filed a motion to dismiss BridgeLux's declaratory judgment claims with respect to two of the patents because there was no actual controversy between the parties. BridgeLux countered that its customers reported that they were being warned by Cree representatives that they risked legal action if they used non-Cree products. Several BridgeLux customers stated that they were reluctant to use its products because they feared being sued by Cree. Furthermore, at a trade conference, a Cree representative publicly identified several products as infringing Cree patents and announced that Cree would bring lawsuits to protect its patents. Id. at *6-7. The district court agreed that BridgeLux had not established the existence of a case or controversy with respect to the two patents upon which Cree sought dismissal. The district court noted that there was no evidence that Cree ever identified a BridgeLux product as infringing these two patents or, indeed, had filed a lawsuit against anyone to enforce the patents. Id. at *9.

Based upon its review of these cases, the Court concludes that Monsanto has not established the existence of "a substantial controversy . . . of sufficient immediacy and reality" to support declaratory judgment jurisdiction. Syngenta's single letter to Monsanto does not establish "a course of conduct that shows a preparedness and willingness to enforce its patent rights . . ." SanDisk, 480 F.3d at 1383. For example, there is no indication that Syngenta has provided Monsanto with a claims construction or an analysis of how Monsanto's PARRLAY™ product infringes the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

patent.  Nor is there an indication that Syngenta has demanded the payment of royalties.  Id.; Sony Electronics, 497 F.3d at 1296.

Monsanto's conduct to date also does not establish an immediate and substantial controversy.  See SanDisk, 480 F.3d at 1381 (An Article III case or controversy arises "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party . . .) (emphasis added). Monsanto does not itself combine glyphosate and metolachlor herbicides for application to crops and no one claims that the '367 patent would be infringed by sequential application of the two herbicides.  However, farmers frequently "tank mix" herbicides prior to application in order to reduce expenses, and the PARRLAY™ label provides instructions on proper proportions for tank-mixing. Monsanto contends that this tank-mixing practice may form the basis for a claim by Syngenta that Monsanto induces infringement under 35 U.S.C. § 271(b) or contributorily infringes under § 271(c).

In order to prevail on an inducement claim under § 271(b), the patent holder must establish "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."  ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd., --- F.3d ---, 2007 WL 2609976, *4 (Fed. Cir. Sept. 12, 2007), quoting Minnesota Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1304-05 (Fed. Cir. 2002).  Specific intent requires a "showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce

-13-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

actual infringements." Id., quoting DSU Med. Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part).

In his declaration, Monsanto employee Larry Evetts states that "it is [his] understanding that the basis for Syngenta's belief that the '367 patent bore on Monsanto's PARRLAY™ product is that farmers have and/or may in the future tank mix glyphosate and metolachlor and apply it to glyphosate tolerant crops. And further, that the '367 patent bore on Monsanto to the extent that Monsanto was verbally recommending a tank mix of Roundup® and PARRLAY™ or had such recommendation on [its labels]." Evetts also states that, based upon his experience in the herbicide business, he would expect farmers to engage in tank-mixing in order to reduce costs. Nowhere in its amended complaint or in Evetts's declaration is there an allegation that Monsanto recommends to farmers that they tank mix its Roundup® and PARRLAY™ products. Evetts's "understanding" of Syngenta's belief about what farmers may have done or might do in the future does not satisfy MedImmune's immediacy and reality requirement. See BridgeLux, 2007 WL 2022024 at *9 (no evidence that patent holder ever identified declaratory judgment plaintiff as infringing patents).

As for a claim against Monsanto for contributory infringement under § 271(c), the patent holder has to establish that the accused device has no substantial non-infringing uses. See DSU Medical Corp., 471 F.3d at 1303, quoting § 271(c). Thus, in order for Syngenta to succeed in a contributory infringement claim against

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Monsanto, it would have to establish that there was no legitimate noninfringing use for PARRLAY™.  See Alloc, Inc. v. International Trade Comm'n, 342 F.3d 1361, 1374 (Fed. Cir. 2003) (holder of patent for method of installing flooring could not establish contributory infringement where accused flooring products could be installed by methods not claimed in the patent).

Monsanto argues that a case or controversy is created because it plans to introduce another herbicide -- Dicamba -- for which Syngenta claims patent protection, when applied in conjunction with glyphosate.  The facts governing any claim regarding Dicamba arose after Monsanto filed this action and thus are not relevant to establishing the existence of a case or controversy in this action.  See Benitec, 495 F.3d at 1344 (party claiming declaratory judgment jurisdiction bears burden to establish jurisdiction existed when claim was filed).

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss plaintiff's first amended declaratory judgment complaint [Doc. #19] is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file a sur-reply [Doc. #27] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 31st day of January, 2008.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com